COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Causey and Callins
Argued at Winchester, Virginia


SHARICE TAKEYA CURTIS

                                       MEMORANDUM OPINION[*] BY
v.       Record No. 0943-23-4           JUDGE DOMINIQUE A. CALLINS
                                             OCTOBER 15, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
J. Bruce Strickland, Judge

John D. Mayoras for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Sharice Takeya Curtis of felony child abuse

pursuant to Code § 18.2-371.1(B). Curtis contends that the evidence was insufficient to support her

conviction and that the trial court erred by "allowing hearsay statements to the forensic nurse to be

admi[tted] at trial." Because we disagree, we affirm the judgment of the trial court.

BACKGROUND[1]

In 2019, S.E. was a five-year-old student in Stafford County living with his aunt, Curtis, and

his grandmother, Martice Curtis ("Martice"). Deanna Pansuti, S.E.'s "primary support teacher,"

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, [as] the prevailing party at trial." *Griffin v. Commonwealth*, 80 Va. App. 84, 87 (2024) (alteration in original) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of Curtis's conflicting evidence "and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* at 87-88 (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

testified that S.E. had behavioral issues one day leading her to complete two "incident reports." Pansuti explained that during lunch, S.E. became upset and ran from the cafeteria. When Pansuti stopped him, S.E. kicked her leg. After S.E. began "throwing chairs, pencils and letter buckets," Pansuti and the school counselor performed the "handle with care" restraint system. They took S.E. to the floor and held him until he calmed down, although Pansuti testified that they "didn't have to hold him down" because S.E. "was just kind of flailing his body." Afterward, Myra Emily Guitreau-Lem, the school nurse, examined S.E. and did not observe any injuries from Pansuti and the school counselor's restraints. After the exam, S.E. returned to his class.

Later that same day, S.E. continued his disruptive behavior and Pansuti escorted him to a padded room. While Pansuti escorted S.E., S.E. grabbed Pansuti's hair and wrapped his arm around her neck. Pansuti involved the school counselor and another teacher to assist her with S.E., but S.E. struck the other teacher in the face when the teacher tried to intervene. They again restrained S.E. and Guitreau-Lem evaluated him once more. Guitreau-Lem determined that S.E. did not exhibit any injuries that could have resulted from the restraints, explaining that an upper-leg injury was "not something that [she] would normally see" from the restraint method used.

After the evaluation, the school principal contacted Martice and Curtis, S.E.'s caretakers while S.E.'s parents were incarcerated. After school that day, S.E. went to after-school care at Kindercare. That evening Curtis and Martice picked up S.E. from Kindercare. No one at Kindercare noticed any injuries to S.E., and Martice testified that S.E. "seemed fine when [she] picked him up."

When they arrived home, Curtis took S.E. upstairs for a bath. While Martice was preparing dinner, Curtis called her upstairs and showed her bruises on S.E.'s leg. Martice testified that the bruises looked like they had occurred that day and that she had not seen them before. S.E. did not

respond when Martice asked what had caused the bruises, and Martice assumed that S.E. had received the bruises while being restrained that day at school.

Martice photographed S.E.'s bruises and planned to confront the school the next day. She explained that S.E.'s father, Eugene Ellis, was released from jail that day so instead she sent the pictures to him and "let him go from there." Martice believed that Ellis sent the pictures to Child Protective Services, who "then went and got the children and picked them up."

Upon receiving the report of the injuries, Stafford County Detective Ridings interviewed Curtis approximately two months following the date of S.E.'s incidents at school. Curtis stated that she did not know how S.E. had received the bruises but opined that he got them while being restrained at school. Curtis acknowledged that she had hit S.E. with a belt a "couple years" earlier but denied having caused the most recent injuries. Curtis declined to attend a follow-up interview a few days later. During his investigation, Detective Ridings also spoke with representatives from the school and the daycare center. The school did not have any record of S.E. having been injured.

Before trial, the Commonwealth moved to introduce S.E.'s statements under the "tender years" exception to the rule against hearsay under Code § 19.2-268.3. Specifically, the Commonwealth sought to admit statements S.E. made to Jodi Green during a forensic interview. During the recorded interview, Green asked S.E. multiple times if Curtis caused his injuries; Green only offered Curtis's name when questioning S.E. about the identity of his abuser. S.E. repeatedly responded that he "did not know." He reported that Curtis "was cussing and everything" while throwing food and toys at him, claiming that something hit him. He identified his injuries in the pictures and said that the person who injured him told him to keep it a secret. At one point, S.E. also stated that he drove himself to the interview, that no one took pictures of his legs, and that his abuser's name was "Jacob." During the interview, S.E. struggled to remain still and ran in and out of the room. The trial court allowed the admission of the statements under Code § 19.2-268.3.

The Commonwealth also filed a motion *in limine* seeking to admit statements S.E. made to Angelina Campbell, a forensic nurse, during the medical examination she conducted immediately after S.E.'s interview with Green. During the exam, Campbell observed injuries on S.E.'s hip and buttocks consistent with bruises. She explained that the injuries were "consistent with a pattern injury." She stated that the blunt force trauma "pushes the blood and the capillaries to the outside where they leak, and then it makes the pattern of the object" used to cause the injury. In her report, Campbell noted that the origins of the injuries suggested they were caused by a belt. When Campbell asked S.E. who had inflicted the injuries, S.E. stated that Curtis had struck him with a belt. The trial court ruled the statements admissible under both the medical treatment exception and the tender years exception to the rule against hearsay.

The jury found Curtis guilty of child abuse, and the trial court convicted her of the offense, sentencing Curtis to 5 years' incarceration with an active sentence of one month and the rest suspended. Curtis now appeals.

ANALYSIS

I. Admissibility of S.E.'s Statements

Curtis argues that the trial court erred by granting the Commonwealth's motion *in limine* seeking to introduce S.E.'s statements to Campbell. She contends, first, that the trial court erred in admitting S.E.'s hearsay statements under Code § 19.2-268.3 because the court "failed to consider all of [the] factors, specifically the age, maturity, and mental state of the child." Curtis argues, second, that the trial court erred in admitting S.E.'s hearsay statements under the medical treatment exception in Virginia Rule of Evidence 2:803(4) because "[w]hen viewed in conjunction with the interview with Ms. Green, there is no way" that S.E.'s statements "could be viewed as reliable." Curtis lastly contends that the error of the trial court was not harmless. Finding no merit to Curtis's arguments, we affirm the judgment of the trial court.

- 4 -

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Pulley v. Commonwealth*, 74 Va. App. 104, 118 (2021) (alteration in original) (quoting *Jones v. Commonwealth*, 71 Va. App. 597, 602 (2020)). "A reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[2] *Baez v. Commonwealth*, 79 Va. App. 90, 109 (2023) (quoting *Bennett v. Commonwealth*, 69 Va. App. 475, 486 (2018)); Va. R. Evid. 2:801(c). "Hearsay is generally inadmissible unless it falls within an exception." *Chenevert v. Commonwealth*, 72 Va. App. 47, 54 (2020). "Code § 19.2-268.3 provides a hearsay exception allowing the admission of out-of-court statements of victims of certain crimes if that victim is under the age of thirteen at the time of the trial." *Id.* "If the defendant is charged with one or more of approximately thirty different listed crimes against children . . . , then the statement may be admitted, despite being hearsay, if two requirements are met." *Id.* "First, the trial court must find—considering seven, nonexclusive, enumerated factors—that 'sufficient indicia of reliability . . . render [the out-of-court statement by the child] inherently trustworthy.'" *Id.* (alterations in original) (quoting Code § 19.2-268.3(B)(1)). "Second, the child must testify, or the trial court must declare the child 'unavailable as a witness' and 'corroborative evidence' of the 'offense against [the child]' must exist." *Id.* (alteration in original) (quoting Code § 19.2-268.3(B)(2)).

The only question on this issue is whether the trial court properly concluded that sufficient indicia of reliability rendered S.E.'s statements during the forensic interview with Campbell

---

[2] The parties do not dispute, at any time, that S.E.'s statements offered to Campbell qualify as hearsay.

inherently trustworthy.[3]  Under Code § 19.2-268.3, the trial court "*may consider*, among other things," "[t]he child's personal knowledge of the event," "[t]he age, maturity, and mental state of the child," "[t]he credibility of the person testifying about the statement," "[a]ny apparent motive the child may have to falsify or distort the event, including bias or coercion," "[w]hether the child was suffering pain or distress when making the statement," and "[w]hether extrinsic evidence exists to show the defendant's opportunity to commit the act."  Code § 19.2-268.3(B)(1)(a)-(f) (emphasis added).

Curtis contends that the trial court failed to consider the age, maturity, and mental state of the child, and further asserts that there was "a real possibility" that S.E. was "unintentionally coerced" to mention Curtis because Green repeatedly mentioned Curtis's name in the interview immediately preceding S.E.'s interview with Campbell.

Campbell acknowledged that S.E. was "very active" during the exam and that she needed to "continually redirect him," but she stated that was not uncommon during interviews with young children and that she was trained to keep him focused.  The court found Campbell, a registered nurse for over 30 years, credible.  Campbell used age-appropriate language and non-leading questions during the interview, and S.E. identified Curtis as the perpetrator without prompting during the interview with Campbell.  Additionally, the record does not demonstrate that S.E. was in any pain or distress during the interview.  S.E. made, arguably, questionable statements in his interview with Green.  Campbell testified that S.E. made an unequivocal statement that Curtis hit him with a belt.  Whether S.E. possessed sufficient maturity or mental stability to proffer reliable statements about the cause of his injuries is a factual determination that the trial court made in favor of reliability.

---

[3] The trial court declared S.E. unavailable, and Curtis does not contest that ruling nor does she contest the corroborative evidence requirement.

Finally, extrinsic evidence shows that Curtis had the opportunity to commit the act. Upon arriving home from the aftercare center, Curtis was alone with S.E. upstairs while Martice prepared dinner in the kitchen. Despite having just been examined twice by Guitreau-Lem at school and displaying no injuries from the restraints, after her brief time alone with S.E., Curtis called to Martice and showed her S.E.'s bruises. Thus, considering the factors of Code § 19.2-268.3(B), we cannot say that the trial court abused its discretion in admitting S.E.'s statements made to forensic nurse Campbell.

Curtis also argues that the trial court erred in admitting S.E.'s statements to Campbell under the exception for statements made "for purposes of medical diagnosis or treatment . . . insofar as reasonably pertinent to diagnosis or treatment." Va. R. Evid. 2:803(4). Because we find that the trial court properly admitted the statements under Code § 19.2-268.3(B), we need not address Curtis's argument that the trial court abused its discretion by also admitting the same statements under the exception to the rule against hearsay for statements made for purposes of medical diagnosis or treatment. "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). Because we hold that the trial court properly admitted the statements under Code § 19.2-268.3(B), we need not address Curtis's argument that the trial court abused its discretion by also admitting the same statements under the hearsay exception for statements made "for purposes of medical diagnosis or treatment."[4] We therefore affirm the trial court's judgment in admitting S.E.'s statements made to Campbell.

---

[4] Given our holding that the trial court did not err, this Court additionally does not address Curtis's harmless error argument.

## II. Sufficiency of the Evidence[5]

Curtis contends that the evidence was insufficient to support her conviction. "In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Walker v. Commonwealth*, 79 Va. App. 737, 743 (2024) (quoting *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry*, 71 Va. App. at 29 (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)).

"Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony." Code § 18.2-371.1(B)(1). Curtis concedes that "there was evidence of significant bruising of S.E.," but she asserts that the

---

[5] Curtis was originally charged with child cruelty in violation of Code § 40.1-103. Upon the Commonwealth's motion, however, the trial court amended the child cruelty charge to child abuse in violation of Code § 18.2-371.1(B). The Commonwealth argues that because Curtis's first assignment of error contends that the evidence was insufficient "as to the felony count of Child Cruelty," rather than listing the offense as child abuse, this argument is procedurally defaulted under Rule 5A:20(b)(2). Because the statement of the case in Curtis's opening brief and her entire argument correctly identifies her conviction of child abuse, we address this argument on the merits.

evidence failed to demonstrate that she caused the injuries and that the Commonwealth failed to exclude the reasonable hypothesis that the crimes were committed by the school. Further, she appears to suggest that S.E.'s statements that Curtis hit him with a belt were unreliable.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Id.* (quoting *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002)).

It is well-established that in considering a sufficiency challenge, "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Clark v. Commonwealth*, 78 Va. App. 726, 751-52 (2023) (quoting *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (en banc)). As with any element of an offense, identity may be proved by direct or circumstantial evidence. *See Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). In so proving, "the Commonwealth[] 'need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.'" *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Hargrove v. Commonwealth*, 77 Va. App. 482, 507 (2023) (alteration in original) (quoting *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (en banc)). "In other words, in a circumstantial evidence case . . . the accumulation of various facts and

inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" of a defendant's guilt. *Ervin*, 57 Va. App. at 505.

Guitreau-Lem examined S.E. after each time he was restrained at school and testified that he did not exhibit any injuries that could have resulted from the restraints. Further, she stated that the bruising seen in the photographs were not the type of injuries the restraints could cause, thus casting doubt on Curtis's alternative hypothesis of innocence that S.E. was injured at school. During the forensic interview with Campbell, S.E. explicitly identified Curtis as the perpetrator and explained that she struck him with a belt. The bruises S.E. exhibited, being the same injuries at issue, were consistent with having been struck by a belt. Curtis admitted during her interview with the police that she had hit S.E. with a belt in the past, but maintained that it had been years since she had hit S.E. with a belt.

"[U]nder the law of Virginia, the jury is free to weigh the evidence how it chooses." *Watson v. Commonwealth*, 298 Va. 197, 208 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 871 (2016)). This Court's deference to the fact finder "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." *Kim v. Commonwealth*, 293 Va. 304, 327 (2017) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). The trier of fact is entitled to reject an appellant's claims of innocence and her self-serving statements to law enforcement. *See, e.g.*, *Rawls v. Commonwealth*, 272 Va. 334, 350 (2006) (rejecting the defendant's self-serving statement to police).

In this case, the jury permissibly rejected Curtis's claim of innocence and accepted S.E.'s identification of Curtis during the interviews. Further, the jury permissibly accepted Guitreau-Lem's testimony that S.E.'s injuries could not have resulted from the two school incidents. Combined with the other evidence presented at trial, the record supports the jury's conclusion that

Curtis inflicted S.E.'s injuries.  Therefore, the evidence was sufficient to prove beyond a reasonable doubt that Curtis was guilty of child abuse.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*